IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

JAMAL T. ALEXANDER                   :
by MEZTISTA SCOTT,                   :
                                     :
        Plaintiff,                   :
                                     :
v.                                   :        CIVIL ACTION 06-0305-M
                                     :
MICHAEL J. ASTRUE,[1]                :
Commissioner of                      :
Social Security,                     :
                                     :
        Defendant.                   :

<u>MEMORANDUM OPINION AND ORDER</u>

In this action under 42 U.S.C. § 1383(c)(3), Plaintiff seeks judicial review of an adverse social security ruling which denied a claim for Supplemental Security Income for children (hereinafter *SSI*).  The parties filed written consent and this action has been referred to the undersigned Magistrate Judge to conduct all proceedings and order the entry of judgment in accordance with 28 U.S.C. § 636(c) and Fed.R.Civ.P. 73 (*see* Doc. 18).  Oral argument was heard on February 26, 2007.  Upon consideration of the administrative record, the memoranda of the parties, and oral argument, it is **ORDERED** that the decision of the Commissioner be **REVERSED** and that this action be **REMANDED** for

_____

[1]Effective February 1, 2007, Michael J. Astrue was confirmed by the Senate to serve as the Commissioner of Social Security.  Pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure, Michael J. Astrue should be substituted, therefore, for Commissioner Jo Anne B. Barnhart as the Defendant in this suit.  No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

further action not inconsistent with the Orders of this Court.

This Court is not free to reweigh the evidence or substitute its judgment for that of the Secretary of Health and Human Services, *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983), which must be supported by substantial evidence. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). The substantial evidence test requires "that the decision under review be supported by evidence sufficient to justify a reasoning mind in accepting it; it is more than a scintilla, but less than a preponderance." *Brady v. Heckler*, 724 F.2d 914, 918 (11th Cir. 1984), *quoting Jones v. Schweiker*, 551 F.Supp. 205 (D. Md. 1982).

Plaintiff was born February 20, 1993. At the time of the most recent administrative hearing, Alexander was twelve years old and had completed sixth-grade special education classes (Tr. 412-14). In claiming benefits, Plaintiff alleges disability due to mild mental retardation, a learning disability, attention deficit hyperactivity disorder, and a speech disorder (Doc. 12 Fact Sheet).

The Plaintiff protectively filed an application for SSI benefits for children on July 6, 1995 (Tr. 47-49). Benefits were initially awarded (Tr. 50-52). Subsequently, the Social Security Administration (hereinafter SSA) re-evaluated Alexander's impairments and, following a hearing by an Administrative Law Judge (ALJ), determined that Plaintiff was no longer disabled;

2

that determination was made on September 26, 2000 (Tr. 15-29).
Plaintiff requested review of the hearing decision (Tr. 13-14) by
the Appeals Council, but it was denied (Tr. 4-7).

Alexander filed an action in this Court on October 10, 2003.
*Alexander v. Barnhart*, Civil Action 03-0688-CB-M (S.D. Ala. March
18, 2005) at Doc. 1.  This Court subsequently reversed the
decision of the Commissioner, finding that the it had been
reached by using the wrong regulations; the action was remanded
for further administrative proceedings. *Id*. at Docs. 20-22.

On remand, the ALJ again determined that Alexander was not
disabled and that the Social Security Administration's decision
to stop paying benefits to him was proper (Tr. 288-307).  Sixty
days after it was rendered, the ALJ's decision became the final
decision of the Commissioner (*see* Doc. 12, p. 2; Doc. 15, p. 2).

Plaintiff claims that the opinion of the ALJ is not
supported by substantial evidence.  Specifically, Alexander
alleges that:  (1) The ALJ improperly rejected recent—and
remote—psychological examination results; and (2) the ALJ
improperly found that he did not meet the requirements of Listing
112.05D (Docs. 12, 23).  Defendant has responded to—and
denies—these claims (Docs. 15, 22).  The medical evidence of
record follows.

On August 16, 1995, Alexander was examined by Thomas S.
Bennett, a clinical psychologist, who administered the Bayley

Scales of Infant Development (Tr. 148-50).  Bennett's diagnostic impression was mild mental retardation, but thought that Plaintiff could improve "if he was involved in a program of early childhood education specifically designed for developmentally delayed children" (Tr. 149).  The Psychologist indicated his belief that the test results were not valid because his effort had been poor.  Bennett further noted that Alexander was "clearly behind in attainment of developmental milestones;" "concentration and persistence [were] poor;" and that his "ability to function in an age appropriate manner cognitively and communicatively [was] well below average" (Tr. 149-50).

On February 20, 1999, a psychological evaluation was performed by Gerald E. McCleary and Patricia G. McCleary (Tr. 161-63).  Results from the Wechsler Preschool and Primary Scale of Intelligence - Revised revealed a Performance IQ of 76, a Verbal IQ of 83, and a Full Scale IQ of 77, placing Plaintiff in the borderline range of intellectual functioning; the McClearys stated that they thought that the test results were valid. Though a secondary diagnostic impression was Disruptive Behavior Disorder, the Psychologists noted that "his disruptive behavior appear[ed] to be more behavioral than ADHD;" they suggested a behavioral management program at home (Tr. 163).  The McClearys also noted speech articulation problems for which they suggested Speech Therapy.

On November 17, 1999, Andrea Coleman, an elementary school teacher, wrote that Plaintiff had been suspended from summer school because of disruptive behavior (Tr. 213). She further wrote that Alexander required "plenty of individual attention," that he was "developmentally delayed and need[ed] special services." *Id.* Another teacher expressed similar sentiments contemporaneously with Coleman's letter (*see* Tr. 215) while a school principal had stated that he could not attend summer school because his behavior "interfered with the teaching learning [sic] of the other students" (Tr. 216). A performance review indicated, generally, that Alexander was inattentive, disruptive, and delayed in his reading and math abilities (Tr. 220-23).

Plaintiff went to Mobile Mental Health for counseling in 1999-2000 during which he was diagnosed to suffer from Attention Deficit Disorder and Oppositional Defiant Disorder with a Global Assessment of Functioning rating of 55[2] (Tr. 274; *see generally* Tr. 266-75). Alexander was given Adderall[3] for a period of time (Tr. 269).

---

[2]"A GAF score between 51-60 indicates "moderate symptoms (*e.g.*, flat affect and circumstantial speech, occasional panic attacks) or moderate difficulty in social, occupational or school functioning (*e.g.*, few friends, conflicts with peers or co-work)." American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders*, 32 (4th ed. 1994).

[3]*Adderall* is an amphetamine used for the treatment of Attention Deficit Disorder with Hyperactivity. *Physician's Desk Reference* 2395-96 (52nd ed. 1998).

On May 4, 2000, Plaintiff took a number of tests, administered by the Mobile County Board of School Commissioners, to measure his various abilities (Tr. 232-43).  Background information indicated that Alexander was disruptive in class, failing all of his academic subject areas, and was on medication for ADHD; though several different strategies had been attempted to change the problems, none had been successful (Tr. 237).  The following test results were thought to be valid.  *Id.*  On the Wechsler Intelligence Scale for Children III, Plaintiff scored a verbal IQ of 69, a performance IQ of 62, and a Full Scale IQ of 62, placing him in the Intellectually Deficient range of functioning (Tr. 238).  On the Kaufman Test of Educational Achievement, Alexander scored a battery composite of one percentile for math, reading, and spelling (Tr. 239-40).  Plaintiff also took the Devereux Behavior Rating Scale - School Form which indicated "characteristics of the serious emotionally disturbed," as determined by three different raters, in the areas of interpersonal problems, inappropriate behavior/feelings, depression, and physical symptoms/fears (Tr. 240-41).  Overall, the tests indicated that Alexander was functioning within the Intellectually Deficient range.

On September 4, 2003, Plaintiff underwent additional psychological evaluation, courtesy of the Mobile County School Board of Commissioners (Tr. 374-80).  On the Comprehensive Test

6

of Nonverbal Intelligence, which measures nonverbal intellectual abilities, Alexander scored a 72 on both the Pictorial Intelligence Composite and Geometric Nonverbal Intelligence Composite while his overall score, on the Nonverbal Intelligence Composite, was 70, placing him in the second percentile (Tr. 376-77).  On the Diagnostic Achievement Battery-Third Edition, which measures academic achievement, Plaintiff scored less than one percentile in all math and reading areas except for a score of the fifth percentile in math reasoning (Tr. 377); he measured less than one percentile in his reading abilities.  *Id.*  There was improvement on the Devereux Behavior Rating Scale, though there were still indications of behavioral difficulties in the physical symptoms/fears subscale (Tr. 378-79, 380; *cf.* Tr. 240-41).  The test administrator, the same person who had conducted the tests three years earlier, indicated that Alexander's overall intellectual functioning was in the poor range with a composite IQ score of 70 (Tr. 380).  Though the test results were considered to be valid measures of overall intellectual functioning, the examiner expressed the opinion that his reading potential was significantly higher (Tr. 375, 380).

On April 25, 2005, Psychologist Laura G. Goulden examined Plaintiff and, after testing, found him to have a Verbal IQ of 67, a Performance IQ of 54, and a Full Scale IQ of 57 which put him in the Intellectually Deficient Range (Tr. 381-85).  On the

Wide Range Achievement Test - Revision 3, Plaintiff scored in the second percentile in math, the first percentile in spelling, and less than one percentile in reading (Tr. 384). Goulden's diagnostic impression was Oppositional Defiant Disorder and mild mental retardation; her prognosis was that Alexander's intellectual functioning would not likely change over the next year and that he would likely "continue to have difficulty in the school environment" (Tr. 384). The Psychologist expressed the opinion that the test results were valid and reliable, noting that the scores were "similar to the results obtained in 2000, although slightly lower on the performance subscale" and "consistent with his poor school performance, most notably in reading" (Tr. 383).

Mobile County School records from 2000 through 2005 show that Plaintiff made mostly all C's in the third and fourth grades; in the fifth grade, he had 3 C's, 2 D's, and 2 U's[4] (Tr. 327; *see generally* 326-73). A report following the 2004-05 calendar year stated that Alexander was "receiving special education services in the area of Emotionally Disturbed" and noted years of "inappropriate behavior and low academic functioning" (Tr. 328).[5] Specific inappropriate behaviors were

---

[4]The Court notes that no explanation is given as to what constitutes a *U* (Tr. 327).

[5]The Court notes that there were numerous reports of inappropriate or bad behavior throughout the school records which will not be specifically set out and discussed herein (Tr. 339-41, 346-48,

listed though it was noted that a Functional Behavior Plan and a Behavior Intervention Plan had improved his behavior.  *Id.* Plaintiff was said to exhibit deficits in all academic areas, performing "3-4 grades below his current grade level."  *Id.* Records demonstrate that, on the Stanford Achievement Test, Alexander scored a verbal score of 78, a nonverbal score of 71, and a total score of 71 in April 2002 and scored a verbal score of 74, a nonverbal score of 76, and a total score of 74 a year later (Tr. 331).

The ALJ summarized the medical evidence set out herein, but rejected the conclusions of Psychologist Goulden because there had been "no explanation for the significant discrepancy in IQ scores from those obtained by the school psychometrist two years earlier in 2003 and because the scores reported by Dr. Goulden are inconsistent with the claimant's demonstrated academic achievement in the 3rd, 4th, and 5th grades" (Tr. 295-99, 301). The ALJ then concluded that the evidence demonstrated that Plaintiff had shown improvement and was no longer disabled (Tr. 301).

Plaintiff has claimed that the ALJ improperly rejected the opinions of Psychologist Goulden (Doc. 12, pp. 3-7).  Though Alexander has made several arguments as to why this is so, the Court finds it unnecessary to address all of them.  Plaintiff

---

361-65, 367-68).

challenges the ALJ's finding that there was a "significant discrepancy in IQ scores from those obtained by the school psychometrist two years earlier in 2003" (*see* Tr. 301).

The Court notes that the ALJ is required to "state specifically the weight accorded to each item of evidence and why he reached that decision." *Cowart v. Schweiker*, 662 F.2d 731, 735 (11th Cir. 1981). The Court notes that the ALJ appears to discredit only the Goulden conclusions; the Court finds no statement of the weight given to the other reports. This makes it difficult to follow the ALJ's line of reasoning. Nevertheless, an attempt will be made.

The Court notes that the School Psychometrist stated, in 2003, that Plaintiff's composite IQ, based on testing, was 70 (Tr. 380). That score is not that far removed from the earlier scores, as found by the School Board tester, of a Verbal IQ of 69 and Performance and Full Scale IQ's of 62 (Tr. 238) or Goulden's Verbal IQ score of 67 (Tr. 383); admittedly, the Performance IQ of 54 and Full Scale IQ of 57, found by Goulden, are lower than scores previously recorded, but drop off, at most, to less than one standard deviation.

In rejecting the conclusions reached by Goulden, the ALJ makes comparisons to the test results of the School Psychometrist (Tr. 301) ("no explanation for the significant discrepancy in IQ scores from those obtained by the school psychometrist two years

10

earlier"). As the ALJ appears to rely on School Board results in reaching his decision,[6] and as the Court finds that Goulden's opinions closely approximate those of the School Board Psychometrist, the Court finds that the ALJ improperly rejected Goulden's conclusions.

Alexander has also claimed that he meets the requirements of Listing 112.05D. That listing requires "[a] valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing additional and significant limitation of function." 20 C.F.R. Part 404, Subpart P, Appendix 1, Listing 112.05D (2006).

The Court notes that all testing, except for that done by the McClearys in February 1999 (Tr. 161-63), has resulted in IQ scores between 60 and 70. That criteria seems to be fairly-well established. The ALJ acknowledges this, though grudgingly (Tr. 301) ("even if it is assumed that the claimant's true IQ level is 70 or below . . .").

The completion of the ALJ's statement, began above, was that "there is no evidence that the claimant possesses any physical impairment or that his disruptive behavior disorder and oppositional defiant disorder impose an additional and

---

[6]If the Court is incorrect in finding that the ALJ has relied on the opinions of the School Psychometrist, the Court finds that the ALJ has erred in discounting those opinions without specifically stating so.

11

significant limitation of function" (Tr. 301).  The ALJ refers to
the second prong of the 112.05D analysis.  The Court notes that
the ALJ specifically found that Alexander had the following
severe impairments:  "borderline intellectual functioning,
disruptive behavior disorder, and oppositional defiant disorder"
(Tr. 301).  In spite of these findings, the ALJ determined that
Plaintiff did not meet or equal the Listings (Tr. 302).

The Court notes that the Eleventh Circuit Court of Appeals
has held that for purposes of § 12.05C,[7] the second prong
requirement is met once there is a finding that the claimant has
an additional severe impairment because the requirement of
"significant work-related limitation of function" "involves
something more than 'minimal' but less than 'severe.'"  *Edwards
by Edwards v. Heckler*, 755 F.2d 1513, 1515 (11th Cir. 1985).[8]  The
*Edwards* Court specifically held that "[o]nce a claimant is found
to have a 'severe impairment' within the meaning of §

---

[7]The Court notes at the outset that Listing 12.05C is the adult
equivalent of Listing 112.05D.  The adult listing requires "[a] valid
verbal, performance, or full scale IQ of 60 through 70 and a physical
or other mental impairment imposing an additional and significant
work-related limitation of function."  20 C.F.R. Part 404, Subpart P,
Appendix 1, Listing 12.05C (2006).

[8]The Court acknowledges that the *Edwards* analysis does not
provide an exact equivalence for considering childhood disability as
decisions regarding their impairments are not based on their ability
to work.  Nevertheless, the Court finds it very instructive.  *See also*
introductory remarks to Listing 112.00 ("The structure of the mental
disorders listing for children under age 18 parallels the structure
for the mental disorders listings for adults but is modified to
reflect the presentation of mental disorders in children").  20 C.F.R.
Part 404, Subpart P, Appendix 1, Listing 112.00 (2006).

404.1520(c), he is deemed disabled (he must also meet the durational requirement), and the analysis comes to an end." *Edwards*, 755 F.2d at 1515.

The Court has previously noted repeated references to Plaintiff's disruptive behavior (*see* note five).  That evidence demonstrates that Plaintiff's behavior and defiance limit his ability to be a student.  This severe impairment meets the second prong of the Listing 112.05D requirements.  On the basis of these findings, the Court determines that Plaintiff has demonstrated that he meets—and has never stopped meeting—the requirements of Listing 112.05D and that benefits have been improperly terminated.

Based on review of the entire record, the Court finds that the Commissioner's decision is not supported by substantial evidence.  Therefore, it is **ORDERED** that this action be **REVERSED** and **REMANDED** to the Social Security Administration for further administrative proceedings not inconsistent with the Orders of this Court.  Judgment will be entered by separate order.

DONE this 19th day of March, 2007.

s/BERT W. MILLING, JR.
UNITED STATES MAGISTRATE JUDGE